**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

COLLEEN LAVONNE LINVILLE,

Plaintiff,

v.

FRANK BISIGNANO,[1]
Commissioner of Social Security,

Defendant.

Case No. 3:26-CV-00357-CLB

**ORDER DENYING PLAINTIFF'S MOTION FOR REMAND AND AFFIRMING THE COMMISSIONER'S DECISION**

[ECF No. 15]

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Colleen LaVonne Linville's ("Linville") application for disability insurance benefits pursuant to Title II of the Social Security Act. Currently pending before the Court is Linville's motion for reversal and remand. (ECF No. 15.) The Commissioner filed a responsive brief, (ECF No. 17), and Linville filed a reply, (ECF No. 18). Having reviewed the pleadings, transcripts, and the Administrative Record ("AR"), (ECF No. 9), the Court denies Linville's motion for remand, (ECF No. 15).

## I. STANDARDS OF REVIEW

### A. Judicial Standard of Review

The Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which

---

[1] Frank Bisignano is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

the plaintiff resides." The court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of

subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

**B. Standards Applicable to Disability Evaluation Process**

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of their claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform their prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits the individual from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p. If the individual

does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four to determine whether the individual has the RFC to perform their past relevant work. 20

C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform their past work, then a finding of not disabled is made. If the individual is unable to perform any past relevant work or does not have any past relevant work, then the analysis proceeds to the fifth and final step.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the individual can do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II. CASE BACKGROUND

### A. Procedural History

Linville applied for DIB on April 22, 2022, with an amended alleged disability onset date of July 21, 2020. (AR 25, 107, 130.) Linville's application was denied initially on September 8, 2022, and upon reconsideration on November 22, 2022. (AR 88-125.) Linville subsequently requested an administrative hearing and on January 30, 2024, Linville and her attorney appeared at a telephonic hearing before an ALJ. (AR 45-87.) A vocational expert ("VE") also appeared at the hearing via telephone. (*Id.*) The ALJ issued a written decision on April 3, 2024, finding that Linville was not disabled because she could perform other work that exists in significant numbers in the national economy. (AR 25-35.) Linville appealed the April 3, 2024 decision, and the Appeals Council denied review. (AR 15-18.) Accordingly, the ALJ's decision became the final decision of the

Commissioner. Having exhausted all administrative remedies, Linville filed a complaint for judicial review on May 14, 2026. (*See* ECF No. 1.)

**B. ALJ's Decision**

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 25-35.) Ultimately, the ALJ disagreed that Linville has been disabled from July 21, 2020, the amended alleged onset date, through December 31, 2022, the date last insured. (AR 35.) The ALJ held that, based on Linville's RFC, age, education, and work experience, Linville could perform other work that exists in significant numbers in the national economy. (AR 34-35.)

In making this determination, the ALJ started at step one. Here, the ALJ found Linville had not engaged in substantial gainful activity during the period from her amended alleged onset date of July 21, 2020, through her date last insured of December 31, 2022. (AR 27.) At step two, the ALJ found Linville had the following severe impairments: degenerative disc disease of cervical and lumbar spine; COPD; history of thoracic spine fractures; and hyperlipidemia. (AR 28.) At step three, the ALJ found that through the date last insured, Linville did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (AR 28.)

Next, the ALJ determined Linville has the RFC to perform light work as defined by 20 CFR 404.1567(b) except:

> the claimant could lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six of eight hours; and sit for six of eight hours. The claimant could frequently climb stairs, balance, stoop, kneel, crouch, and crawl, but only occasionally climb ladders. She required the option to change positions between sitting and standing every half hour, as needed, throughout the day while remaining on task. She could not have concentrated exposure to hazards and pulmonary irritants.

(AR 29.)

The ALJ found Linville's medically determinable impairments could reasonably be expected to cause the symptoms alleged; however, Linville's statements concerning the

intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 30.) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and factors weighing against Linville's credibility. (AR 29-33.) The ALJ determined Linville could not perform her past relevant work as a water truck driver II, septic truck tank servicer, and heavy equipment operator, as actually or generally performed. (AR 33.) However, the ALJ then determined that the "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills." (AR 34 (citing SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).)

Relying on the testimony of the VE, the ALJ determined that Linville's age, education, work experience, and RFC would allow her to perform other occupations existing in significant numbers in the national economy, such as: cashier, interviewer, and information clerk. (AR 34.) Accordingly, the ALJ held that Linville had not been under a disability from July 21, 2020, the amended alleged onset date, through December 31, 2022, the date last insured, and denied Linville's claim. (AR 35.)

## III. ISSUE

Linville seeks judicial review of the Commissioner's final decision denying DIB under Title II of the Social Security Act. (ECF No. 15.) Linville raises two issues for review:

(1) Whether the ALJ erred in failing to evaluate Linville's mental health impairment at step two; and

(2) Whether the ALJ improperly rejected a medical source, Dr. McNairn.

(*Id.* at 4-9.)

## IV. DISCUSSION

### A. ALJ Properly Rejected Dr. McNairn's Opinion

Although Mitchell's argument relating to Dr. McNairn appears chronologically second, the Court will address this issue first because it has a bearing on whether or not

the ALJ's decision at step two was supported by substantial evidence. In determining a claimant's RFC, an ALJ must assess all the evidence (including the claimant's and others' descriptions of limitation, and medical reports) to determine what capacity the claimant has for work despite their impairment(s). *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017). The RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate." *Laborin*, 867 F.3d at 1153 (quoting SSR 96–8p, 61 Fed. Reg. at 34478) (emphasis removed).

Ninth Circuit precedent holds that an ALJ is responsible for translating and incorporating clinical findings into a succinct RFC and may properly reject an opinion "when it lacks support from objective medical findings or relies upon properly discounted subjective reports of a claimant." *Rounds v. Comm'r of SSA*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Smith v. Berryhill*, 752 F. App'x 473, 475 (9th Cir. 2019) (unpublished), *citing Bayliss v. Barnhart*, 427 F.3d 1211, 1216-17 (9th Cir. 2005). An ALJ must articulate the persuasiveness of the medical opinions or prior administrative findings, based on factors set forth in the regulations, the most important factors being consistency and supportability. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b); *see Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.' [20 C.F.R.] § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is 'consistent… with the evidence from other medical sources and nonmedical sources in the claim.' [20 C.F.R.] § 404.1520c(c)(2)." *Woods*, 32 F.4th 791-92.

The ALJ discussed Dr. McNairn's consultative examination and opinions as follows:

> I also considered the August 2022 opinions from James McNairn, PsyD, the consultative examiner (Exhibit 4F). Dr. McNairn opined that the claimant is mildly to moderately impaired in the ability to interact with others and

> maintain work attendance, but she would be moderately impaired in the ability to deal with stress (Exhibit 4F/5-6). However, this conclusion is not consistent with the longitudinal medical record. Rather, while Dr. McNairn listed a diagnosis of "unspecified mental disorder," this is a bare diagnosis with no supportable signs or findings. Rather, the consultative examination was fairly unremarkable and did not result in any specific diagnosis that would support the existence of a medically determinable impairment. The evidence also does not show any mental health treatment. At the hearing, the claimant testified that she does not see a psychiatrist and that she did not undergo any mental health treatment. Moreover, even if this were a medically determinable impairment, it would be non-severe. As such, this opinion is unsupported by Dr. McNairn's own examination and is inconsistent with the medical record as a whole. Therefore, I find this opinion to be unpersuasive.

(AR 32-33.)

Linville argues the ALJ erred in finding Dr. McNairn's opinion was unpersuasive because she concluded it was inconsistent with the record. (ECF No. 15 at 8.) Specifically, Linville argues Dr. McNairn's opinion was not inconsistent with the record because Linville has a longstanding prescription for an antidepressant to treat her irritability. (*Id.*) Linville also argues that the ALJ's conclusion that evidence does not show any mental health treatment is incorrect for the same reason. (*Id.*) Linville further argues this error is harmful, because if the ALJ had properly credited Dr. McNairn's opinion, she would have found at least some "moderate" limitation in the functional areas of the psychiatric review technique, resulting in a finding that Linville's mental health impairment was "severe" and therefore include mental health limitations in Linville's RFC. (*Id.* at 9.) By failing to do so, Linville argues the vocational expert's opinion is invalid and therefore the evidence in the record does not support the finding that there is work Linville can still perform. (*Id.*)

In his brief, the Commissioner argues the ALJ properly evaluated Dr. McNairn's opinion and found it lacked supportability and consistency. (ECF No. 17 at 8.) The Commissioner points to the ALJ's determination that Dr. McNairn's opinion lacked supportability because the "mild to moderate limitations in the opinion did not match the 'fairly unremarkable' findings upon examination." (*Id.* (citing AR 32).) The Commissioner argues Dr. McNairn's examination results showing no problems in social functioning contradict his opinion that Linville would have limitations accepting instructions from

supervisors and interacting with coworkers and the public. (ECF No. 17 at 9 (citing AR 546, 548).) The Commissioner further argues that Dr. McNairn's opinion that Linville will have difficulty maintaining attendance, completing a workday or work week, and dealing with stress in the workplace is contradicted by the examination results showing Linville had normal alertness and stamina, ability to follow instructions, average intelligence, normal fund of knowledge, and no problems with concentration, abstract thinking, judgment, or insight. (*Id.* (citing AR 545-48).) Finally, the Commissioner argues Linville provides no evidence that is consistent with the limitations in Dr. McNairn's opinion, and that Linville's prescription for Effexor does not itself provide evidence that Linville is limited in accepting instructions from supervisors, interacting with coworkers and the public, performing work activities on a consistent basis, maintaining attendance at work, or dealing with stress. (ECF No. 17 at 10.) The Commissioner then points to evidence in the record showing Linville's irritability was "well controlled" by the Effexor. (*Id.* (citing AR 565, 572, 695.)

The Ninth Circuit has found that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Schiaffino v. Saul*, 799 F. App'x 473, 476 (9th Cir. 2020) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quotation omitted)). Therefore, the mere fact that Linville has not received or sought out mental health treatment is not a proper basis to discount a medical provider's opinion.

However, the ALJ's rationale for finding Dr. McNairn's opinion unpersuasive stemming from the internal inconsistency with Dr. McNairn's own evaluation does constitute a proper reason for discounting his opinion. *See Darling v. Kijakazi*, No. 22-35594, 2023 WL 4103935, at *1 (9th Cir. June 21, 2023) (holding that substantial evidence supported the ALJ's evaluations of the persuasiveness of medical opinions and "the ALJ properly considered the supportability and consistency factors under the revised regulations," stating that "[b]ased on these factors, the ALJ permissibly concluded that [a physician's] opinion was internally inconsistent," and noting that "[a]n ALJ is not required

to incant the 'magic words' of 'supportability' and 'consistency' in his findings" (citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989))); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (applying the revised regulations on evaluating medical opinions and holding that substantial evidence supported the ALJ's finding that a physician's opinion was "internally inconsistent"). In *Wood*, the Ninth Circuit found that substantial evidence supported the ALJ's finding that an examining physician's opinion unpersuasive where "it was inconsistent with the overall treating notes and mental status exams in the record." 34 F.4th at 792-93. The Ninth Circuit has explained that "an ALJ need only provide an explanation supported by substantial evidence" for discounting a medical opinion. *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) (quoting *Woods*, 32 F.4th at 792) (internal quotations omitted). In *Kitchens*, the Ninth Circuit held that the ALJ had not erred where the ALJ discounted a physician's opinion, in part, because it was "inconsistent with ... [the physician's] own [findings]," and that "an ALJ may discount a doctor's opinions that are inconsistent with or unsupported by the doctor's own clinical findings." *Id.* (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).

The Commissioner specifically points to Dr. McNairn's evaluation report which noted the following: (1) Linville had no problems performing household chores or personal care activities, she had contact with family and friends, she had hobbies, and she enjoyed eating at restaurants (AR 545); (2) Dr. McNairn observed no problems with social functioning, noting that Linville had several friends that she maintained occasional contact with (AR 545), (3) Linville displayed a normal level of alertness and stamina, followed instructions, listened to questions, and responded in turn upon evaluation (AR 545); (4) Linville was cooperative and pleasant throughout the evaluation, applied a good degree of effort, and maintained appropriate eye contact, and exhibited normal speech, thought content, and full orientation (AR 546); (5) Linville described her mood as "good," her sleep as "restless," and her appetite as "fair to good" (AR 546); (6) Dr. McNairn estimated that her intelligence was in the average range (AR 546); (7) Linville exhibited some difficulties

with immediate and recent memory, but her remote memory remained intact (AR 546); and (8) that Linville Plaintiff had some problems performing calculations, but she exhibited a normal fund of knowledge, and no problems with concentration, abstract thinking, judgment, or insight (AR 546-47). (ECF No. 17 at 8-9.) None of these examination results support a finding that Linville is mildly to moderately impaired in her ability to accept instructions from supervisors, interact with coworkers and the public, or maintain work attendance and complete a normal workday or work week. Dr. McNairn also does not provide any explanation of why his examination supports his findings.

Additionally, Linville does not challenge the ALJ's evaluation of Dr. Haroun or Dr. Koutrakos's medical opinions, which the ALJ also found unpersuasive. Dr. Haroun opined that Linville had mild limitations in interacting with others, (AR 97), and Dr. Koutrakos opined that Linville had mild limitations in interacting with others, concentration, persisting, and maintaining pace, and adapting or managing oneself. (AR 115-16.) Specifically, Dr. Koutrakos noted that "the claimants (sic) recall is fine, she interacted with the examiner fine and has a long standing marriage. Objectively this is non severe." (AR 114.) The ALJ found both opinions unpersuasive because they were inconsistent with the longitudinal medical record and the consultative examination. (AR 32.)

The Supreme Court and Ninth Circuit have recognized that the threshold for substantial evidentiary sufficiency is "not high," and a district court must uphold an ALJ's conclusion if the evidence is susceptible to more than one rational interpretation. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("[T]he threshold for [substantial] evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla. It means–and means only–such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102-3 (2019)); *Peebles v. Kijakazi*, No. 22-35841, 2023 WL 5567156, at *1 (9th Cir. Aug. 29, 2023) (holding that the ALJ adequately assessed the persuasiveness of medical opinions and noting that "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld" (quoting *Burch v. Barnhart*, 400 F.3d 676,

679 (9th Cir. 2005))). Based on the above, there is substantial evidence in the record to support the ALJ's conclusion and the decision of the ALJ must be upheld. *See* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

Finally, even if the ALJ did err in discounting Dr. McNairn's opinion based on the reasons stated in her decision, such error would not be harmful. If an ALJ's legal error was harmless, *i.e.*, if there is substantial evidence in the record to support the ALJ's conclusion on the challenged issue absent the legal error, the case need not be remanded for further proceedings. *See, e.g.*, *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015). When determining whether any error was harmful, the Court must look to the record as a whole to determine whether any error altered the outcome of the case. *See Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006); *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Treichler v. Commissioner of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citations and internal quotation marks omitted), *quoted in Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

Here, the evidence in the record shows Linville's irritability was "well controlled" by her Effexor prescription. (AR 544 ("She informed that she has been taking Effexor, an antidepressant, for many years and it helps lessen her irritability."); 565 (Medical note from August 12, 2021 stating "[i]rritability/anger well controlled on Effexor 75mg daily."); 679 (note from May 26, 2022 stating irritability "improved on venlafaxine 150mg.").) Evidence of medical treatment successfully relieving symptoms can undermine a claim of disability. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (citing 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1)). Moreover, as explained above, the evidence in the record does not support the limitations described by Dr. McNairn, even if the ALJ did not specifically point to the underlying evidence in his decision. *Treichler*, 775 F.3d at 1099.

Therefore, even assuming the ALJ did err, such error was "inconsequential to the ultimate nondisability determination" and therefore the case need not be remanded for further proceedings on this issue. *Ford*, 950 F.3d at 1154 (internal quotations omitted).

**B. ALJ Properly Evaluated Linville's Mental Health Impairment**

The Court will now turn to the issue of whether the ALJ properly evaluated Linville's mental health impairment at step two. The second step of the disability evaluation process addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits the individual from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; SSRs 85-28 and 96-3p. In evaluating the severity of mental impairments, a special procedure must be followed at each level of administrative review. *See* 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the ALJ evaluates a claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [claimant has] a medically determinable mental impairment[ ]." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). The ALJ must also "specify the symptoms, signs, and laboratory findings that substantiate the presence of [each determined] impairment and document [the] findings ...." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).

Next, the ALJ rates "the degree of functional limitation resulting from [claimant's] impairment." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). There are four broad functional areas, also known as the "paragraph B" areas, in which the ALJ will rate the degree of functional limitation: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id*. The ALJ rates the degree of limitation in each of the four areas using a five-point scale: "None, mild, moderate, marked, and extreme." *Id*. After determining the degree of functional limitation, the ALJ then determines the severity of the mental impairment. *See* 20 C.F.R.

§§ 404.1520a(d), 416.920a(d). Where the claimant fails to establish a medically determinable mental impairment, the ALJ has no duty to determine the degree of the claimant's functional limitations. *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 726 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520a(b).

Linville argues the ALJ erred by failing to evaluate her mental health impairment at step two because Dr. McNairn is an objective medical source and his clinical interview is sufficient to establish a medically determinable impairment. (ECF No. 15 at 5.) Linville further argues that the improvement of her irritability with medication constitutes a "sign" sufficient to support the establishment of a medically determinable impairment. (ECF No. 18 at 2.) The Commissioner opposes, arguing that the lack of discussion in the medical record of any clinical diagnostic techniques to determine whether Linville exhibited signs, as opposed to symptoms, and therefore there is no evidence in the record to support finding a medically determinable impairment. (ECF No. 17 at 4-6.)

Signs are defined as:

> one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.

20 C.F.R. § 404.1502(g). Symptoms are defined as "your own description of your physical or mental impairment." § 404.1502(i). Thus, "signs" are clearly distinct from "symptoms," and symptoms alone cannot constitute signs. Additionally, a diagnosis is not sufficient to establish the existence of an impairment. § 404.1521.

First, as noted above, the ALJ did not err in finding that Dr. McNairn's opinion was unpersuasive. Therefore, the ALJ did not err at step two by failing to find a medically determinable impairment based on Dr. McNairn's opinion. Moreover, there is no evidence in the record of a medical provider *observing* Linville's irritability. As the Commissioner points out, there are no care notes that discuss the use of clinical diagnostic techniques

to determine whether Linville also exhibited signs that might have established a medically determinable mental impairment. (ECF No. 17 at 5.) Linville's medical history shows many notations of irritability but does not include any discussion of medically acceptable clinical diagnostic techniques or medically demonstrable phenomena. (AR 562, 564, 565, 572, 578, 611, 633, 655, 677, 679, 695, 813, 821).

Linville argues that because her medical history documents improvements to her irritability based on her prescription of Effexor, those constitute signs. (ECF Nos. 15 at 5, 18 at 2.) Linville points to *Buck v. Berryhill*, which stated that "allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness. In the context of this case, [the medical provider's] partial reliance on [the claimaint's] self-reported symptoms is thus not a reason to reject his opinion." 869 F.3d 1040, 1049 (9th Cir. 2017). However, the instant case is distinct because Dr. McNairn relied solely on Linville's reported symptoms, as he specifically found in his evaluation that Linville was "cooperative and pleasant throughout the evaluation" and that her "[a]ffect was appropriate." (AR 546.) In specifically discussing her irritability, Dr. McNairn noted that Linville's "symptom severity" was in the moderate range. (AR 547.) Therefore, this case is distinct from *Buck* because Dr. McNairn relied entirely on Linville's self-reported symptoms. Therefore, the ALJ did not err in finding that no signs supported the existence of irritability or "unspecified mental disorder" as a medically determinable impairment. Consequently, because Linville failed to establish a medically determinable mental impairment, she necessarily also failed to establish a colorable claim of mental impairment such that the ALJ had no duty to apply the special psychiatric review technique and determine her degree of functional limitation. *See Keyser*, 648 F.3d at 726; *see also* 20 C.F.R. § 404.1520a(b).

Based on the above, the ALJ's evaluation of Linville's mental health impairment at step two is supported by inferences reasonably drawn from the record.[2] *Batson*, 359 F.3d

---

[2] Again, even if the ALJ did err, such error would be harmless for the same reasons as previously stated. *Ford*, 950 F.3d at 1154, *Wellington*, 878 F.3d at 876 (citing

at 1193. As such, the ALJ's decision is supported by substantial evidence and must be upheld. *See* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

## V. CONCLUSION

Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds the ALJ's decision was supported by substantial evidence and is free of legal error.

Accordingly, **IT IS THEREFORE ORDERED** that Linville's motion to remand, (ECF No. 15), is **DENIED** and the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and **CLOSE THIS CASE**.

**DATED**: November 17, 2026.

**UNITED STATES MAGISTRATE JUDGE**

20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1)) (evidence of medial treatment successfully relieving symptoms can undermine claim of disability).